National Association of Criminal Defense Lawyers as the amicus, oral argument of 15 minutes to be shared by the appellant and the amicus, not to exceed 15 minutes for the appellee, Christopher Todd Varner for the appellant. Good morning. May it please the court, my name is Chris Varner from Chattanooga, Tennessee, and I'll be arguing on behalf of Mr. Young along with Professor Doug Berman. And with the court's permission, what we've elected to do is to split, reserve 5 minutes for rebuttal, and then with the first 10 minutes, split it evenly 5 and 5, so that I'll have 5 minutes and then Mr. Berman, or Professor Berman will have the second 5. Alright, very well. Your Honors, I'll be addressing the Fifth Amendment due process issues and Professor Berman will be addressing the Eighth Amendment cruel and unusual punishment issues. And to begin, I think that maybe the easiest way to do this is to just simply move into what seem to be the central areas of dispute established by the briefing. And the first item that I'd like to address is the issue of whether or not 922G1 is a strict liability statute. And to an extent, well to begin, the term strict liability commentators will tell you is kind of a nebulous question. But I'm not sure that it really matters that much. What's important, I believe, for the court's consideration when it comes to evaluating the strict liability aspect of 922G1, which I might add the U.S. Supreme Court in 1985 in the Liparota case said that a knowing statute can constitute a strict liability statute, Liparota being the food stamp case. But the real issue is this. Because we're talking about a notice issue, most, first of all, statutes that don't have a specific intent moral culpability element are generally disfavored. And also, the great majority of statutes do in fact have that kind of a standard. The significance of that for the purposes of the notice analysis under the Fifth Amendment is that often you don't really have a question of notice when that is actually an element that the government has to prove to establish a criminal violation. This is one of those more rare situations where you don't have that to fall back on. And so then, with regard to the notice issue and whether or not there's a mistake of law, that analysis becomes a lot more meaningful. Now, the Supreme Court in 1952, 1985, and as recently as eight days ago, has reiterated the importance of a moral culpability component with regard to criminal punishment. 1952, the Supreme Court set it in Morissette v. U.S. 1985 was the Liparota case. And eight days ago was the Rosemont case, I believe. Your argument, help me understand your argument, is that the moral culpability defines knowing possession as knowing that the possession is in violation of the law and not the cases that say you knew you had it. Yes, Your Honor. And, in fact, a lot of times that's how the court tends to bypass the entire analysis. You knew you were breaking the law. You can't seriously say to us that you didn't know that because, you know, you had a firearm and that's considered to be general public knowledge that a felon's not allowed to possess a firearm. Or you were doing something else with it, such as the Moore case, a 2011 case from this circuit, where a man was beating his girlfriend while holding the firearm. You know, he couldn't really be heard to complain that he didn't know he was breaking the law. That's exactly it. And so... I guess I just have a preliminary. This is a conditional guilty plea? No, Your Honor. It's an unconditional guilty plea? Yes, Your Honor. Why wouldn't this issue be consumed in as unconditional guilty plea since it doesn't go to the jurisdiction of the court? It's an as-applied challenge, Your Honor. Okay. And so we're saying that because, given the circumstances here, that this is not the standard that should be applied to him, just knowing that he had shotgun shells. Give us your best case supporting that. Casere, Your Honor. U.S. v. Casere, which is the 2005 case from this circuit. And what you have there is a discussion of the mistake-of-law standard, where the court cited Lambert v. California, a 1957 U.S. Supreme Court case. And basically they said, okay, under these circumstances, there are two things that you have to show. You have to show that the defendant actually did not know of the law, actual notice, and that's unchallenged here. And the second issue is whether or not there's any proof of probability of knowledge, which is fair notice. And I'm sorry, Your Honor, I see that I'm out of time. Would you like me to finish the response? I would, yeah. Okay. And here, with regard to the fair notice issue, what we have done, and you'll see this in the briefing, is discuss all the ways in which ammunition is treated differently from firearms in the jurisprudence, but even more specifically, shotgun shells. Because, and you'll see that the government isn't able to cite you to a single case, talking about that it's generally held knowledge that felons are not allowed to possess ammunition. And there are several reasons for this. One is that the vast majority of jurisdictions on the state level don't prohibit it. Mr. Young. We don't, is it your understanding that it was not part of the plea taking, the admonition regarding ammunition was not part of the statements of the court at the taking of the plea? Oh, that issue, and that's actually what I was actually getting ready to say next, it had to do with the terms of supervised release. When the court entered its judgment against Mr. Young, and both in writing and orally, Mr. Young was told that he was not allowed to possess firearms, destructive devices, or other weapons of any kind. Guess what a shotgun shell under federal law is not? Not any of those three things. And this just basically goes back to the entire issue of whether it's general knowledge in the way that it is for firearms, that felons are not allowed to possess ammunition generally, or more specifically in here, and this is an as-applied challenge, shotgun shells in particular. And ammunition is considered intrinsically innocent, unlike, for example, hand grenades, even firearms are considered intrinsically innocent, but the general knowledge that felons are not allowed to possess firearms sort of trumps that. Felons are singled out as sort of a subset, and so felons are held to that level of knowledge. Any further questions at this time? All right, and you'll have your rebuttal time as well, Mr. Warner. Thank you, Your Honor. Good morning. Good morning. May it please the Court, and thank you for the Court's permission to argue on behalf of the NACDL. Professor Douglas Berman is representing the NACDL. It is often said that no good deed goes unpunished, but of course the Constitution says that cruel and unusual punishments shall not be inflicted, and it is the NACDL's position that under the circumstances of this case, again, remembering as counsel has already highlighted, that this is an as-applied challenge. The government's response to the Eighth Amendment arguments seem to be based in the misapprehension that this is some kind of facial challenge, that there's an assertion that this statute can't be applied constitutionally. That's not at all what's going on here. This is exactly the kind of rare and extraordinary case that the Supreme Court's jurisprudence has consistently articulated, and, in fact, the reason the NACDL was eager to intervene in this setting is because these facts are so extreme, is because the circumstances are so extraordinary, is because this is the kind of rare case that, candidly, if the Eighth Amendment doesn't provide some check on the application of a mandatory 15-year non-parolable punishment under federal law for the mere passive possession, and I want to suggest that highlight as a distinction that could be made by this court to further buttress a claim that the Eighth Amendment is violated as applied. This is not a case of a felon walking into a store, buying reams of ammunition, perhaps planning subsequently to go buy a gun. If the acquisition of the ammunition had been done in a manner that suggested an additional intent to arm, this would be a very different case. But that is not, as I understand it, the circumstances into which Mr. Young came into possession of this ammunition. And the Supreme Court has itself highlighted, this is actually in Graham, where the court was explaining the difference between a categorical challenge that it was applying and has recently with respect to juvenile life without parole sentences, and the more as-applied challenge that comes up more commonly for adult offenders. And this is the exact language from the court. You should consider, quote, all of the circumstances of the case to determine whether the sentence is unconstitutionally excessive. And again, that's partly what drove the NACDL to want to get involved in this manner. The circumstances of this case are so extraordinary. And I mentioned it in the NACDL's brief. This really does remind me of some of the scenes I'm reading now in my teenager's dystopian novels. The idea that helping out a neighbor in that context, coming into possession of shotgun shells inadvertently, then realizing that you had those shotgun shells but not being aware, as Mr. Varner has itself highlighted, that that obviously was a criminal activity. And then not, as I presume the government would assert, in order to avoid a 15-year sentence, the defendant would have had to dispossess himself of those shotgun shells immediately. In fact, one of the many things that I'm uncertain about in the government's defense of this prosecution in this sentence is whether they think the moment he became aware that the shotgun shells were in his possession, at that moment he was subject to a mandatory 15-year sentence. Even if he were to go at that point and try to dispose of these shells, he still has come into knowing possession. And so the application of the statute under these unique circumstances strikes me as not only obviously rare, extreme, extraordinary, using all the terms the Supreme Court has used, to emphasize that there is still a basis for an Eighth Amendment challenge to a term-of-year sentence, but that if constructed statutorily this way and if applied without a constitutional limit, it is almost inconceivable to me, quite honestly, in a nation that Abraham Lincoln himself described as conceived in liberty, that this simple act by this fellow would lead to a mandatory 15-year sentence, one that it seems from my reading of the record the judge below had hoped he would not be required to impose, but only through the work of this Court applying the Eighth Amendment, I think very consistent with established constitutional precedent. Give us your best case. The older cases, there are not many of these cases. That's exactly right, though, I think that... Ewing is the most recent. That is true. And that's not very helpful, is it? Well, I'll say two things to distinguish Ewing that I think are very important. One is obviously in that case we're dealing with the Supreme Court reviewing a state legislative judgment, where I think there's every reason to believe additional deference is built into the Eighth Amendment inquiry in that setting. In fact, the Supreme Court has emphasized that point in Harmelin and other cases, that a big part of why it's only the most extreme cases where the Eighth Amendment ought to limit what can be done, is because deference to state judgments and legislative judgments are important. There it was a clear legislative judgment by California to essentially bring the hammer down on repeated felons who hadn't learned the error of their ways. This is not that kind of case in the sense that the intentionality, the lack of moral culpability in play here is different in kind, not just that if we're talking about a federal statute that I think there's good reason to believe ought not sensibly be thought to be reflecting a legislative judgment, that this is the kind of person who should be subject to this 15-year mandatory sentence. But also that, again, this is not the intentionality behind. Again, I would imagine if Ewing was a case where a person had accidentally shoplifted but technically violated the statute, it would be a different kind of story. I would also emphasize, just asking about the best case, and I see my time is up, but let me just quickly highlight this point, that the language of Solem, the one case where the Supreme Court has held unconstitutional as grossly disproportionate, a term of your sentence, the court emphasized the relevant factors. This was a non-exhausted lift, but they all, I think, inure to the benefit of the defendant in this claim. They stress the harm caused or threatened to the victim or society. I have a hard time even identifying the harm caused or even threatened when we're talking about shotgun shells as opposed to a firearm that could obviously, even if unloaded, be used to threaten somebody. I've never seen anybody try to threaten another, either a particular victim or society, by holding some shotgun shells. The culpability of the offender was another factor that the Solem Court emphasized. Again, we've gone over the point that this is a setting. Let's talk about the offender, Professor Berman. The government, in their brief, emphasizes that Mr. Young has four aggravated burglaries, convictions, three burglaries, five theft offenses, and two assaults. That's his criminal record, and I don't think you dispute that, do you? I don't dispute that. When was he last released from supervised custody or prison? You say his last conviction was 20 years ago, but when was he last freed from supervision from the Department of Corrections? My understanding, and again, I don't have the exact date. I would defer to my co-counsel on that point, but I would highlight that my understanding is none of those prior convictions under the sentencing guidelines would have counted to drive up his criminal history score, and so one of the points that I'm trying to emphasize... That's not my question. No, I understand that. When was he last released from prison? I believe it was a number of years ago. 1996, right? When did he fulfill his terms of supervised release or parole? I'm not sure he was under any... He wasn't under correctional supervision at that time. Okay, so 1996 was the last time he was under supervision. And the other point that they make in the brief is that for this incident, the police find stolen property in his house. Is that in dispute or not? I don't think that's in dispute. I would highlight the point, and this goes to an... We're looking at the offender with quite a criminal record with stolen property, with a history of aggravated felonies. Okay, so we've got that. And the Congress, they've made the judgment that it's not only possession of firearms but possession of ammunition by felons. That's punishable. And I guess the reason is you can't do one without the other, that a firearm without ammunition is not lethal, but ammunition without a firearm isn't either. You've got to put the two together, so they're prohibiting both. And they punish them the same way, but that's their call, isn't it? Well, so a couple points I want to raise, and I see I'm out of time, but I'm eager to answer your question in full detail, and I agree completely that it is a very important case. One point to make is I believe, and this is not particularly well established in the Supreme Court's jurisprudence, in part because, to my knowledge, it's extraordinarily rare that the only strong justification for an extreme sentence like this is uncharged, unconvicted conduct. Now, we're used to that in the context of the federal sentencing guidelines where we have this notion of relevant conduct, and we not only think it's appropriate to consider it as part of guideline calculations, but I would submit that this would be a very different case had this not been a mandatorily required 15-year minimum. But instead, the sentencing judge, having been given discretion by Congress among a range, were to say, well, one of the reasons I'm in this case punishing this sentence so severely, this defendant so severely, is because it's not just that he has this ammunition. I'm also considering as relevant conduct. Now, there would be a debate over whether it's qualifiable, but then your standard of review would be reasonableness, and it might be reasonable, I'm not suggesting it is, but it might be reasonable for the judge to have made that judgment. What's interesting, and I think is important to keep in mind for application of the Eighth Amendment challenge we make here, is that Congress has set a 10-year maximum for this offense absent these distant prior triggers. And again, all of those are the circumstances of the case that make this particular application of a 15-year mandatory minimum to Mr. Young I think as applied, I submit on behalf of NACDL, had those prior convictions been last week, last month, last year, it's a different case. Had even the government charged these other offenses, or if he was in the midst of being prosecuted under state law and there was an ongoing additional conviction that was going on. But all we have on this record, and candidly, as a matter of constitutional jurisprudence, I think it would be quite dangerous to say fundamentally, yes, this is an unconstitutional sentence based on the offense of conviction, on its terms. But we know he's really a bad guy. We know, even though it would be unconstitutional, but for this... That's in fact what the district court had to tell him, wasn't it? Didn't the district court say to him, it looks like you're being punished for your old crimes? And indisputably, and criminal history is relevant, that one can be punished for their prior crimes because we definitely think, and rightly do think, that a defendant is more dangerous and more culpable for choosing to violate the law after having already gotten in trouble and served time. Although this is where the moral culpability and the fair notice issue not only informs the Fifth Amendment claim being made here, but as well has to inform the Eighth Amendment claim. Again, this is what I think distinguishes Ewing. There's no doubt that Mr. Ewing, Mr. Locklear in the companion case, or Andrade in the companion case, knew full well they had a long criminal record. Among other things, knew full well that California had, both by initiative and by legislation, said if you're a repeat offender who keeps going back to criminal activity, we're going to throw the book at you. And again, I want to be clear, if Tennessee had prosecuted Mr. Young for these other alleged crimes, if the federal government had prosecuted Mr. Young for these other alleged crimes, this is a different case. But they're here asserting, and I just want to end with this point, and it's a point that troubles me. They're here asserting not only did Congress intend to bring the hammer down this way, and I wonder about that to the extent the Eighth Amendment is about deference to the legislature, as you suggested, Judge Griffin. You agree that he qualifies as an armed career criminal, right? I don't think that's in dispute. Well, candidly, it's my own belief that he's not really armed. He's possessing shotgun shells. He technically fits within the statute. As it's defined by the statute, I don't think that was an issue. I thought it was settled that under the definition in the statute, he qualifies. I agree completely, Your Honor, and that's why we are here making this constitutional claim because it's my supposition on behalf of the NACDL that that can't be the end of the Eighth Amendment analysis because if it's simply enough to say Congress wanted to be especially harsh on certain kinds of offenders and then to couple that with the conclusion that this person technically fits within the terms of a statute, case over for constitutional purposes, I don't believe that's the framers' view of what that was there. In fact, again, this is the other point I want to make to distinguish Ewing, to distinguish some other cases where the Supreme Court has shown deference to legislatures. From a framers' originalist perspective, of course, the thought wasn't that this clause would apply to limit what state governments did. The understanding by the framers for the Eighth Amendment was to provide a limit on what Congress could do in an effort to punish citizens through the kind of oppressive mechanisms that, of course, the colonialists struggled with and were concerned about. You see this even in the Declaration of Independence. The concern of making up technical offenses and sending out officers in an effort to prosecute, I think the language that Thomas Jefferson wrote, to eat out their substance. If we allow this kind of punishment and this kind of application of this statute to be immune from constitutional scrutiny, it would be tantamount to saying Congress can do whatever it wants and, and I want to emphasize this point, there is wonderful scholarship cited in our brief that highlights to the extent this is always a challenge, what the framers would have wanted were judges like you looking to state patterns, state guides as to what is cruel and unusual. And the fact that not only could I not find a single state that would even consider applying a decade's mandatory punishment here, there's only a handful of states that would even make this act criminal. And in all of those cases, indisputably a judge would have discretion to consider all the circumstances of the case. And again, that's the other thing that I want to highlight. If there was a record here that the judge had looked at the individual circumstances of this case and was permitted to make a judgment that this was a proportional punishment, I'm not saying that it would necessarily pass all scrutiny. I am saying that that's different in kind than what we have is an application of an extreme congressional statute that doesn't reflect the very proportionality norms that are built into how the Supreme Court interprets the cruel and unusual punishment clause. You're arguing that all mandatory minimums are unconstitutional. I'm not making that suggestion, though. It certainly warms my heart that you might be drawn to that conclusion. Anything further for Professor Berman? All right. Thank you. Thank you, judges. May it please the Court. My name is Christopher Bull. I'm from the U.S. Attorney's Office in Chattanooga. Have you prosecuted? Is this man being prosecuted by the state? He was charged in the state at the same time with eight charges, I think five, six felonies, three different burglaries, contributing to the delinquency of a minor because he used his son on two of the different burglaries. How many years ago? He was charged at the same time as this. Which was? Which was 2011. They were dismissed after the resolution of this case because they basically let us handle it, waited to see what happened, and then dismissed the burglaries. But he was originally arrested by the local police who were investigating three burglaries. He did confess to those burglaries and admitted using his juvenile son on two of those burglaries. So I do think we need to look at all the circumstances of the case. Our brief cites that he had seven ACC predicates, and that's what I argued because I had the judgments down below. If you actually go back and look at the PSR, he had 11 ACC predicates. I'm struggling. If that was the charge that the state had, why did the feds take this over? The state, quite frankly, asked us to take it over. The local police said we've got another string of burglaries from someone who actually, as I was going to say in his PSR, has 19 felony convictions. And while he was faced with these charges in the state, they wanted to make sure that he got a mandatory remand. And we agreed based on the circumstances of the case, like I said, and the person. You're talking about somebody with 19 felonies. The last time he was in jail, at least for some time, was actually 2005 when he assaulted two people. He sent one man to the hospital and hit a woman into a door. I think he got probation, but that was the last time he was arrested. Those were not felonies, but they were violent offenses. Was he convicted in 2005? Yes, it's in the PSR. He was convicted of two counts of assault, misdemeanor assault. Okay, that's a misdemeanor. They were not felonies. They say his last felony conviction was 20 years ago. I believe you asked the last time he was in jail or the last time he was under supervision. I want to know because they kind of claim, well, this guy's been straight and a model citizen ever since 20 years ago. And I said, well, he probably hasn't been out of prison that long. Well, on April 10th of 2005, according to the PSR, he got into an argument and beat a man badly enough he had to go to the hospital and slam the woman into a door. And so he was given probation for a year then, or 11 months and 29 days. So you're talking about from 2006 to 2011. But we know, and he admitted it, that he's committed three more sets of burglaries, which include thefts and other charges as well. So he's got all these other charges. That's why the police were there. There's been no adjudication of this, correct? There was no adjudication because of the adjudication of this. That is correct. They dismissed without proof after he was sentenced. But he did confess to it, and we did point that out at sentencing. From a proportionality analysis, we don't have to just consider convictions, do we? We can consider other... A jury could, under relevant conduct and looking at the circumstances, a jury could acquit you of it and it could still be considered. Even acquitted conduct, we have authority that that may be considered. And I think it's significant, to me anyway it was, that he was using his juvenile son. And this was in the argument in our response to the brief and was not contested, and it's in the PSR, to commit this latest sets of burglaries. I understand the as-applied argument. And if he had had three burglaries from 30 years ago and got caught with some bullets and had done nothing else, I understand that argument. But when you've got 19 felonies, when you've just gone on a string of the exact same type of behavior that got you in trouble before, and now you're bringing your minor son into it, I do think this is the type of person that Congress intended this law to apply to. To send the message you can't do that, and because they're a danger to the community. Burglaries are crimes of violence. And breaking into people's houses and businesses... Did you have this dialogue with the sentencing judge? I did, to a certain degree, Judge. I pointed out the new activity. I pointed out that he used his son. And quite frankly, I probably shouldn't have let... And I know we're going to end up here. I shouldn't have let them put in the declaration. I should have had a full-blown hearing and cross-examined the defendant about his supposedly innocent possession of the ammunition, because that's not what he said when he was arrested. He said, those are my shells. At sentencing, he puts in the declaration, and I let him do it. So that's the record. Quite frankly, I was confident that Judge Collier was going to do what he did and say the law is that it's a 15-year mandatory minimum. And that's basically what he said. I made those arguments. He did not address them one way or the other. He said, this is the law. It's an interesting argument. Take it up. And they'll take it up. It's something that somebody ought to look at. Absolutely. And so now I'm making that argument again, because I do think... I think you ought to look at all the circumstances. And I can understand, in theory, where this argument as applied could be made. I just don't think a guy with 19 felonies who's on a current streak of committing new felonies with his juvenile son is the person to apply it to. I think it's an appropriate sentence in this case. Let me just ask you something. Yes, ma'am. Was any of this scored as relevant conduct? It was not scored as relevant conduct. Since the shotgun shells were not stolen, the only way on ACC it was going to matter was if it was in connection with another felony. It would have been a 34-6 as opposed to a 33-4. So we could not prove that the ammunition was stolen in one of these burglaries. So no, it was not. I think that information is listed in the PSR, but it was not used as relevant conduct or conduct unrelated to the offense. It was argued. It's in there in the charges. It's in there in our responses. And are his confessions to these burglaries part of the record? They are part of the record in the argument section of our response. I believe they are also in the offense conduct. He confessed. As a matter of fact, I think it's in the factual basis of his plea agreement as well. The fact that his son was involved may or may not have been in that offense conduct, but the fact that a minor is involved is in the charge cases in the PSR, the pending charges at that time. They were pending in state court. And then I did respond in writing and put that in my argument, and I did argue it, and it's never been contested. I mean, it is a fact. And I believe in looking at the plea agreement, looking at the sentencing transcript and the PSR altogether, I think that's established. The Eighth Amendment challenge goes to the sentence, and that's proper. But I still have a question as to the due process notice challenge. When you have an unconditional guilty plea, I mean, the general rule is all non-jurisdictional defects are consumed in a guilty plea, and unless you conditionally plead, you can't contest the conviction on the basis once you've made the unconditional plea. And I don't see the due process. Maybe they try to dovetail it to the 15-year minimum, but it seems to me it goes more to the conviction. It does to me as well, Judge. I think there's two things here. I mean, I think really you put the Fifth and the Eighth Amendment together. The argument really is from the defense, this is too much time for this offense, really. I mean, that's what it is. If he had gotten 18 months, he's not going to make this argument that he didn't knowingly possess the firearm. Whether he knowingly possessed or not, he pled guilty to it. He did. He did, and I do think that that is a kind of guilt, innocence. If he didn't think he was doing anything wrong or didn't do anything wrong, he should have gone to trial. Now, I understand that the case, and he understands, I know that the case law is you only have to know that you possessed it. And so there's the argument there. But it seems to me the argument is a step further than that, that they're trying to make the argument that he didn't do anything wrong. He wasn't guilty, but he's pled guilty. This court in Davis on a felon in possession of a firearm, and granted all these cases that we mostly see are firearm cases, but in Davis, I think this is instructive, the defendant didn't know he was a felon, technically. There's no doubt that he possessed a firearm. It seems to me if you don't know, but he knowingly possessed a firearm and his conviction was affirmed, it seems to me if you don't know you're a felon, that is a somewhat strong argument to I didn't know I could have it. Whatever it was, I was on diversion, I didn't know the end of the judgment, whatever. If that doesn't matter, this ignorance of the law is no defense comes into play here with regard to ammunition. I do think it's reasonable to someone with felonies to think that they're going to be restricted. Obviously the courts have said with regards to firearms it makes sense that they're going to look at, governments are going to look at you more closely. You should know this would be restricted. I don't think it's unreasonable to say the same thing about ammunition. The ammunition is no good without a firearm and vice versa, as you pointed out, Judge. There may be times where police don't find the gun or you're going to get a gun later. It wouldn't do you any good, or a shotgun in this case, but you've already got the ammunition. I think it's reasonable and Congress can prohibit that conduct. I think that all of the cases indicate that we should give deference to Congress. I disagree with Amicus. I think we should give deference to federal laws just as much as we do to state legislators' decisions on how to punish them. His argument was that there is an additional layer when you're looking at a state case because you have a different sovereign. Certainly. Would you not concede that that's a fair argument? That when we are reviewing a state court decision that we have to consider the fact that that is the state court's right to determine its own laws and its own prosecution. Certainly. But when we are here looking at a constitutional issue on a federal charge, then there's no independent sovereign layer to look through. Well, that's true, but I do think that Congress should do some deference in making the laws and that there's a reasonable… I don't think he would dispute that. Right. Whether there are two layers or not. Exactly. And I think in this case that the law is clear, that it is appropriate. I don't know. You asked about the colloquy to Mr. Varner. I thought that the colloquy did not mention ammunition and I thought that… I didn't know if you meant the state colloquy. I know now that in at least one criminal court state judge, when you plead guilty in the state court to your felonies that may end up getting you in federal court, tells the defendants you cannot have ammunition. Good. So I know that that is… now whether or not that happened in 1992, I can't say that. But that's important and I think the deterrence factor is important. And I think that's why this case is important. You'll be deterred if you know you're being deterred, which is kind of the circularity of your problem. And I think the notice about guns, that's just pretty clear. And I think their argument is everyone knows a felon can't carry a weapon. Everybody knows it in the criminal industry and in the general world. But the question evidenced by the different treatment between states, 11 of whom outlaw ammunition and with much lesser penalties. There's not this concerted, agreed upon recognition within the community that you don't get to do that. And I would say under 922G, a couple things if I might. Does everyone know that if you've been declared mentally incompetent, you can't have a gun? Does everybody know if you're under the order of protection, you can't have a gun? If you've got a misdemeanor crime of domestic violence, you can't have a gun. I know the latter two this court's dealt with and said as long as you knowingly possess it, that's enough. And those are firearms, but they're not the… Of course that falls within the argument of firearms. But they're not the common case of a felon. If anyone knows that if you've renounced your citizenship publicly, you cannot have a gun under 922G. I mean there are nine subsets obviously of 922G of people who can't possess firearms or ammunition. Felon in possession of a firearm may be the most – certainly is the most known. But this court has upheld G8 and G9. They're guns, but it's not common knowledge perhaps that if I'm under a domestic violence order, I can't get a firearm. Now there's supposed to be notice, and we know that in that case. But I do think it's instructive. I certainly want to talk just briefly also about the different idea of sovereigns and states don't prosecute – don't make it illegal to have ammunition as the United States does. I think sovereigns can choose to handle problems differently, and I think that the courts always believe we should show deference to that. I was responding to a death penalty brief that we've been working on recently in the Gambrion case, which I'm sure you're all familiar with. I think it's from Michigan from last year. Maybe apples to oranges, but to me it was instructive. That was the case where someone killed somebody in Michigan in a federal park. I think he was about 200 feet in or some relatively small distance into the park. And he argued that he ought to be able to argue there was mitigation because Michigan did not have the death penalty. This court said that was not mitigation. That was not relevant in mitigation because it's a different sovereign. Sure, you're in the same state, but you're 200 feet into this park, and it's different. Isn't the difference here that the Supreme Court's criteria, what they look to, includes sentences imposed for the same offense in other jurisdictions, sentences imposed on others in the same jurisdiction? That's part of the three-part objective criteria that the Supreme Court says you need to be looking to. I'm back on the Eighth Amendment. Gravity of the offense compared to the harshness of the penalty, what our jurisdiction does, what other jurisdictions do. So all of those, we're instructed to look at that, and I believe their arguments regarding other jurisdictions arise in the Eighth Amendment context. And perhaps that's correct, Judge. So my question is, fairly so, correct? Certainly. It's something to be considered. I still think, and the one thing maybe both sides agree on, is we need to look at all the circumstances of this case and this defendant. And I think that's what was done here, and my time is up. Generally, we see federal sentencing as much harsher than state sentencing. I can't think of very many crimes or hardly any that the federal sentencing is less harsh than the state. It's usually much more, and that's one of my first reactions when I got on this court was, wow, look at these guidelines, federal guidelines. I mean, where are they going to put all these people? But that's been the policy of Congress, is to have harsher penalties. And maybe it's because they don't have to balance the budget, that they can keep writing checks, and they don't have to worry about it, while the state legislatures, they run out of money, and they've got to figure out how many people can we incarcerate here. And before too long, their state guidelines start going the other way. I think that's correct, Judge. That comes to you as a question as to why the feds pick up so many of these cases. And why is there an exercise of prosecutorial discretion to charge state crimes effectively? There absolutely is, and we don't take every bullet or shotgun shell case that comes our way. Project Safe Neighborhoods, Department of Justice, our task is to work with our state and local partners, and we like to do that. And when there's someone who is a serious problem to the state and local authorities, we discuss which best forum to handle this case. And that's exactly what happened in this case. You've got a burglary investigation because there's a string of burglaries. They find this and they say, this guy is a real thorn in the side. He just keeps doing that. How can we best make sure that he stops doing that? Well, he also possessed, knowingly possessed, this ammunition. So that's exactly how these cases come about. As I said, if I get a call from somebody who 30 years ago had three burglary convictions and they catch him with a bullet, we're probably not here. But if you've got 19 felonies and you're still doing it, and you're using your son, and the locals say, we've got to stop this, can you help us out? That's the case we have here. And it is working together with our local partners to figure out, and using prosecutorial discretion to figure out how best to solve the problem that in this case was Mr. Young's continued criminal activity. Is there any information coming from the Department of Justice higher-ups regarding this ammunition issue? No, and I noted that there's the argument in the brief that there's a movement against mandatory minimum sentences. But those are all in the drug context as far as I know. I have not seen anything on ammunition or firearms. My guess would be, if anything, that this administration is tightening down more because of shootings in schools and movie theaters, tightening down more on firearms and ammunition, not less. It's making it harder to get a hold of these things. That's my take on it, but we have not had any direction on it. All the direction and all the cases and all the submitted legislation I know about are with regard to mandatory minimums and drug cases. If anything, I think guns and ammunition are going the other way. So if we accept that he came by them honestly, both because he was helping out his neighbor and also because he didn't know that he was on a disability, do you see a problem with his sentence being escalated like that? For Mr. Young, I don't. And it's because of the reasons I've stated, because of his record. Like I said, you say if you accept it. I can't hear you. I'm sorry. If you accept his story. So if you do, you still know he is on a crime spree at the time. He's been on a crime spree before. And that's why I say you have to look at all the circumstances. If his argument is, I didn't do anything wrong, then he shouldn't have pled guilty. Okay, but then should maybe he be sentenced for those other crimes? If your argument depends upon him having done these other things, shouldn't he be convicted of them before you rely on it? I don't think that's necessary, Judge. My argument is that you have to consider the crime and the criminal. You have to consider all of it. And I think that was the argument from me, because you have to consider all the circumstances. And those are circumstances in sentencing someone. As we pointed out, I think, earlier in the discussion, you could go to trial by jury and be acquitted of conduct, but it could be considered at sentencing under our federal system. And when you have someone who's confessed to these, I don't think that is a far stretch to say, I can consider that. Had it been brought up at a sentencing hearing by a preponderance or the evidence would have been proved when he confessed on tape to doing it, I would submit yes. So, just out of curiosity, do you know what that sentence would have been? If he was convicted of all these counts? Interestingly, in state court, it's possible, quite frankly, he could have gotten a longer sentence. Now, he would have been eligible for parole. Because of his record, he would have been— and it's been 12 years since I've been at the DA's office— but he would have been a clear offender at the highest level of the elevated scale under the state. And I think you're eligible for parole for 60 percent, is my recollection of that. But he was looking at at least 15 years, had they filed the enhancement. Because—and he was sentenced, you notice in the PSR, as a persistent offender on his later burglaries, which means they had filed enhancements on him before they had stepped up because he had these felonies. But because he had more than five felonies, technically he could have been looking at a very significant sentence in the state. You just would not have known when he might get parole and they get two-for-one credits while they wait. I mean, it's a hard way to figure what you're actually going to serve. Any further questions? Thank you. Thank you, Mr. Poole. All right. Five minutes rebuttal jointly by the defendant and the amicus. I'm going to be kind of strict here because we're going way along here. Yes, Your Honor. I'm sorry for the pun, but I guess I'm going to proceed in a little bit of a shotgun, taking sort of a shotgun approach here. To begin, you know, one of the issues here is that the mandatory minimums preclude consideration of the individual circumstances of a case, and that's really the problem. That's a facial attack as the constitutionality of the minimum. You're saying this is as applied, though. Correct, Your Honor. But, I mean, it's the prosecution a little bit trying to have it both ways, not having the consideration of any of the underlying facts and circumstances with the imposition of 180-month mandatory minimum, but at the same time, oh, look at all these other things over here which are uncharged. Well, that's what you have to do for the constitutional analysis. I mean, statutorily, he qualifies for the minimum sentence, and under the statute that's what he gets. I mean, the argument here is, okay, that's what the statute says, but the statute violates the Eighth Amendment, and Congress can't do everything they want. They might want to be very harsh on every criminal, but the Eighth Amendment actually applies to Congress. It was enacted to apply to Congress, and it has some teeth, and this is the situation as applied to Mr. Young that violates the Eighth Amendment, and this is what the drafters of the Bill of Rights intended here. But what he was convicted of, Your Honor, was the knowing possession of the shotgun shells, and I'd like to, in a few minutes, hopefully I can return to the point that you were asking about whether or not that was subsumed within the guilty plea. I'm going to try to get back to that point. But to discuss what you just raised right this moment, the shotgun shells, let's be very, very clear about this. The shotgun shells were not stolen. The shotgun shells were not used in the commission of any crime. The shotgun shells had nothing to do with why his home was searched. The shotgun shells were completely irrelevant and isolated from every other circumstance that existed in this case. If the federal government wants to take over these prosecutions and discuss this crime spree, then they can go ahead and prosecute those crimes, but they did not in this case. They prosecuted him for the possession of seven shotgun shells, which it is uncontested, he came into possession of unknowingly and innocently, and his possession of them was passive. There's absolutely no doubt about that in the record. It is uncontested. And then suddenly discussing the sun, moon, and stars in terms of these other charges that were dismissed, it doesn't hold water, Your Honor. And that creates a real problem. Another prism through which you can view that is his criminal history category is one, and his sentencing guideline range in the absence of the Armed Career Criminal Act would have been 10 to 16 months. He's already exceeded 16 months in prison right now. And that is where you look at, okay, so what is this violation really? And that's what the 10 to 16 months tells you. And in terms of all the other ACCA cases that are out there, and I'm very aware that this court said in 2011 on I think two separate occasions that there's never been a successful constitutional challenge to the ACCA, but I don't know that there's ever been that kind of a sentencing disparity. Because you're looking at a situation where I believe that if he had been given 16 months, which I think you can tell from the comments from the court below, he would not have been given. It would have been on the low end. But that's 11 times. What he received was 11 times the maximum that he would have received under the sentencing guideline range. And if it had been the minimum, which I think is far more likely, it would have been 10 months. And that's 18 times. His sentence is 18 times what he likely would have received. And if you look at the Gonzales case from the Ninth Circuit, he's actually less culpable than Mr. Gonzales was. And there the Eighth Amendment challenge was granted. And it's because there was an element of intent there. That one of the elements of the crime, Mr. Gonzales' failure to renew his annual sex offender registration, was that he had to know that he was supposed to do it. Here, the record, it's unchallenged that Mr. Young did not know. Well, he pled guilty, so that's out of the picture, isn't it? No, Your Honor. I mean, that's an element of the offense, right? No, Your Honor. No? No. In fact, that's one of the central… Knowingly possess ammunition? I'm sorry? Knowingly possess ammunition? Yes, Your Honor. That is known. Right, and I plead guilty to it, so I guess I don't understand it. He knew he had the shotgun shells, Your Honor. That's true. Or he discovered that he had them, actually, is probably the better way to put it, after he had actually taken possession of them. And I'm guilty of the crime. Yes, Your Honor. Technically, as it's written. Technically, yeah. Okay. I mean, normally in a situation like this, I see conditional guilty pleas. I want to challenge this part of my plea or this or that, but… But he didn't get… Was this a guilty plea agreement? Yes, Your Honor. What did he get in exchange? Just a two-level reduction, Your Honor, of what the sentencing guideline range would have been. He went from a 14 to a 12. Of course, the guidelines don't apply anyway because you've got the mandatory minimum. Right. But, Your Honor, one of the things… Did he sign an appellate waiver? He did for one issue, but not this issue. What do you mean by for one issue, but not this one? Prior counsel had filed a motion to suppress. I can't hear you. Prior counsel had filed a motion to suppress. I believe that was reserved. I could be wrong about that. And then he explicitly waived appeal of one issue? I'm sorry, Your Honor? You're saying that there was an agreement where he explicitly waived the appeal of that issue? I think that issue… Mr. Poole, can you explain what the plea agreement was? He received three levels off for acceptance of responsibility. He did not waive appellate issues. Judge Collier does not take appellate waivers. However, obviously, when you plead guilty, you're giving up the right to protest your guilt. So he was able to bring up basically only sentencing issues. It's our standard plea agreement. But what he received, I guess, would be the three levels off for acceptance from what would be a 33-4 as an on-court criminal to a 34. But he did not specifically waive sentencing or any other appellate issues. That's true, Your Honor. In the absence of the ACCA, it would have been a 19-12. Mr. Poole is correct about the… All right, I think you're out of time. Professor, do you want just a couple minutes for rebuttal? I mean, we're letting it go kind of loose here. But I think it's only fair to get you… Well, I appreciate that. And, again, I want to emphasize the point in response to what government's counsel has highlighted. Certainly, there is a basis, and it would be nice if we had a record where the government felt some kind of compunction to go into the district court and make the case that Mr. Young deserves such a severe sentence for being an armed career criminal. But that's where the mandatory minimum dimension of this combined with the Eighth Amendment claim. Fundamentally, as I see it, because of the broad technical reach of what Congress passed. I'm not candidly sure this is what Congress intended. But looking at the text of the statute and this response to you, Judge Griffin, I don't think there's any dispute that Mr. Young's conduct falls within the strict terms of the Armed Career Criminal Act, mandatory minimum 15 years. But it seems as though what the government says, and to this court is claiming creates no constitutional problem, is to use that technical statute in order to over-punish what it thinks the defendant has done or has admitted to or claims to be involved in. And, again, to the extent that, and I heard it from oral argument here, it's not 20 years ago's crimes that they're relying on. And, of course, that wasn't even well-developed. Those, of course, are the predicates that makes Mr. Young technically fall within the statute. But nothing the government claims he admitted to now, none of the conduct that they think is why it was appropriate in their discretion to bring the case over to federal court, was ever proven by any standard that any court would ever accept because that broad reach of this statute, again, a broad reach that I'm not sure is Congress's intent but is in the exact language, gave them the ability not just to prosecute him for a crime, not just to convict him of a crime, not just to punish him for the crime, but to mandate, excluding anything else that could be said by either party that 15 years has to be given for the offense. And that's what the offense is, possessing seven shotgun shells, having been convicted 20 years ago of these predicate offenses. And, to me, if the Eighth Amendment means anything, if there is a limit that judges are to enforce rather than just prosecutors, this extreme case is the one in which the framers' intent to put a limit on how broad Congress as the legislative branch could define crimes and punishment and to put a limit on the executive branch to their use of those crimes and punishments is in play. I will submit, and this is why the NACDL got involved, it's really a question of whether there are three branches that play a role in judging punishment or if at the end of the day the Eighth Amendment has no role to play and instead it's just whatever Congress decides ought to cover a statute and it's only in the hands of prosecutorial discretion. Even if this is, and I think by any objective measure, I've talked to a lot of people about this case, exactly what happened, and they say something else must be going on. That can't be how the statute works. I'm like, yeah, there actually is a lot more going on. We heard it today. The government says, well, it's really because he did these other crimes and his son was involved and he's got this long history. And let me tell you some more things. Are you saying that they can't consider that? I'm saying the statute as applied here makes those considerations irrelevant at sentencing. Okay. We have a violation of the statute. So the law authorizes, in fact requires, a 15-year sentence. Okay. So now because we're talking about the Eighth Amendment, we're looking behind it, which we don't normally do. Are you saying that for Eighth Amendment purposes we cannot look to his recent activity? We can't look to the fact that he confessed to doing these other burglaries? Or that we can look to them but they don't matter? I would say two things. I certainly, in drawing on the Supreme Court's discussion of all the circumstances of the case, do think you must go beyond the technical terms of the statutory offense in doing the comparative weighing. But I think when there hasn't been a record made below to justify that that comparative weighing would call for the gravity of the offense, and here particularly I want to emphasize the point that there's no nexus at all between the offense that's being used as the basis for the 15-year sentence and everything else that's being alleged. We could be in a case comparable. He's not good to his pet and I've got some good evidence and this is why I decided to prosecute this case as the prosecutor. The burden on the Eighth Amendment challenge, is it your burden or the prosecutor's burden to prove an Eighth Amendment violation? My sense is the facts to support the Eighth Amendment claim is the defendant's burden. If you say that the trial court doesn't have an adequate evidentiary record on the Eighth Amendment, I would say that that's probably Mr. Young's fault and not the prosecutor's fault. The Eighth Amendment challenge was raised below. The government opposed it. If there's factual disputes that are going to be resolved about it, I would think that Mr. Young should have pressed for it, maybe demanded an evidentiary hearing, appealed the denial of one, something of that sort. But the challenge of constitutionality is for the person who's raising the constitutionality. With all due respect, my read of the district court's work was not a statement of, well, if you provided more mitigating evidence, I would have granted the claim here. In fact, what I'm responding to... You have to have an offer of proof that, Your Honor, as applied, this violates the Eighth Amendment. Well, okay, I think it violates it anyway. Well, consider the fouling evidence that we would present. That's what offer of proof is, a proffer. My understanding is the offer of proof in mitigation was put forward at the district court concerning how he came into possession of this material. There was also, if I recall correctly, evidence submitted, or at least in the record, concerning the neighbor that he was helping, indicating that that's how he came into possession of these shells. There's no evidence. Again, the evidence that was put forward that I do think forcefully makes the Eighth Amendment claim was that this wasn't either stolen material or that there was an intent to then go get a gun. Again, I want to suggest, if there was any allegation, that the very harm that the Armed Career Criminal Act is there to address, which is somebody with a history of criminality arming themselves to, therefore, become an even more dangerous criminal. Again, that's why I think it's important to keep in mind that a number of nonviolent offenses, such as Mr. Young's, can be predicates, because I think Congress is making a legitimate judgment. Hey, even if you've done a bunch of nonviolent crimes, if then you go get a gun and are planning to heighten your criminal activity, you're now going to not just do burglaries, you're going to do armed burglaries. You're not just going to go after a bank. You're going to come in with a gun and try to threaten people in conjunction with that. It's an Armed Career Criminal Act that clearly shows in its very title that what Congress's concern is is somebody with a long criminal history that triggers this, getting access to a gun. And it makes sense to me that if someone goes and buys ammunition, they're going to go do that first, and then they're going to go buy a gun, that we have a different case. But that's not this case, and that's the evidence that was presented to the district court. What the government is now trying to do is saying, well, we knew we were going to roll the district court, right? Because the district court said, take it up with my bosses, essentially. Take it up with the Sixth Circuit. We didn't even have to put in the record that there was a strong basis for saying, yeah, that's a pretty good challenge, but not with Mr. Young. We've got to wait until Mr. Jones comes along. We'll take a careful look at it. Any further questions? Judge White? Judge Strand? And thank you again on behalf of NACDL for the time to present amicus arguments. Thank you for appearing and participating. The case will be submitted, and you may call the next case.